THE PEOPLE ex rel. ROSWELL W. KEENE, Appellant, *v.* THE BOARD OF SUPERVISORS OF QUEENS COUNTY, Impleaded, etc., Respondent.

The act of 1891 (Chap. 290, Laws of 1891), which authorizes and empowers the boards of supervisors of the counties of Kings and Queens to build a bridge, at a point specified, over navigable waters dividing the two counties, "or to show cause," etc., is in contravention of the provision of the State Constitution (Art. 18, § 3) prohibiting the state legislature from passing local bills providing for building bridges.

The duty imposed by the "County Law" of 1892 (§ 68, chap. 18, Laws of 1892) upon the boards of supervisors of two counties divided by navigable tide waters spanned by a bridge on a highway crossing such waters, to keep the same in repair, is mandatory, not discretionary, and when the reparation requires that the bridge shall be re-built, it is the duty of the two boards to re-build it.

The performance of this duty may be compelled by mandamus.

A citizen of one of the counties who is put to inconvenience by reason of the non-repair of the bridge, and so is injured by the inaction of the boards, is entitled to be a relator in proceedings by mandamus to compel the performance of their duty.

It is the office of a writ of mandamus in such a case to put the boards in motion simply; it is for them to determine the character of the bridge, so only that it meets the public needs. The courts may not control their discretion in this respect, so long as they act in good faith.

An alternative writ of mandamus is equivalent to a complaint in an action, and a demurrer thereto stands as a demurrer in an ordinary suit.

Where, therefore, the substantial right is set out in an alternative writ, the proceeding will not fail because the relator asks for too much, or mistakes to some extent the relief to which he is entitled.

The court, *it seems*, may, in awarding the peremptory writ, mould it according to the just rights of all the parties.

The provision of the act of Congress of 1890 (§ 7. chap. 907), prohibiting the construction of such a bridge until its location and plan shall be approved by the secretary of war, does not justify inaction on the part of the boards of supervisors, and, *it seems,* the matter may be provided for in the peremptory writ.

*People ex rel. Keene* v. *Supervisors* (71 Hun, 97), reversed.

(Argued April 9, 1894; decided April 24, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made August 25, 1893, which affirmed an order of Special Term sustaining a demurrer by defendant to an alternative writ of mandamus.

The relator applied, under the act of 1891, an act amending chapter 487 of the Laws of 1884, entitled "An act authorizing the construction of a drawbridge over Newtown creek in Queens county," as amended by chapter 184 of the Laws of 1887 (Chap. 290, Laws of 1891), for a mandamus requiring the boards of supervisors of the counties of Kings and Queens to construct and maintain a bridge across Newtown creek on Maspeth avenue.

The facts, so far as material, are stated in the opinion.

*Roswell W. Keene,* in person, for appellant. The writ and papers presented by the relator show that Maspeth avenue is a public highway. (Laws of 1872, chap. 780; Laws of 1838, chap. 262.) The demurrer admits all the facts stated in the writ and affidavits. (*Meyr* v. *S. I. R. Co.,* 7 N. Y. S. R. 245; *Cutter* v. *Wright,* 22 N. Y. 472; *Hall* v. *Bartlett,* 9 Barb. 297.) In a matter of public right, any citizen of the state may be a relator in an application for a mandamus (where that is the appropriate remedy) to enforce the execution of the common law or of an act of the legislature. (*People ex rel.* v. *Collins,* 19 Wend. 56; *People* v. *Halsey,* 37 N. Y. 344; *People ex rel.* v. *Supervisors,* 56 id. 249; *People ex rel.* v. *Common Council,* 77 id. 511; 133 id. 214; *Hamilton* v. *State,* 3 Ind. 452; 5 id. 310; 123 Mass. 460; 78 Ill. 382.) The boards of supervisors of the two counties are in duty bound to

provide for the care, maintenance, preservation and reparation of any draw or other bridge intersecting the boundary line of the counties over navigable tide waters, where such bridge is or is a part of a public highway, and in case of refusal of one or both boards to act, they can be compelled by the writ of mandamus to perform that duty. (Laws of 1880, chap. 320; *People* v. *Supervisors*, 1 Hill, 50; *People ex rel.* v. *Supervisors*, 8 N. Y. 317; *Boyce* v. *Supervisors*, 20 Barb. 294; *People ex rel.* v. *Board of Supervisors*, 32 N. Y. 473; *Gray* v. *State*, 72 Ind. 567; 72 Penn. St. 24; 32 Smith [Pa.], 132.) The point insisted on by the court below, and the learned counsel for the respondent, that the approval of plans must first be obtained from the secretary of war of the United States, is without force. (*Comm.* v. *New Bedford*, 2 Gray, 339; *Flanagan* v. *Philadelphia*, 42 Penn. St. 219.) The requisite duty is imposed upon the supervisors under the general laws or statutes of the state. (Laws of 1876, chap. 275, § 5; Laws 1879, chap. 364; Laws 1880, chap. 320; *People ex rel.* v. *Supervisors*, 51 N. Y. 402.) The direction of the writ to the board of supervisors is the proper remedy. (*Hill* v. *Board of Supervisors*, 12 N. Y. 52; *People ex rel.* v. *Supervisors*, 51 id. 402; *People ex rel.* v. *Supervisors*, 20 id. 252; *People ex rel.* v. *Supervisors*, 73 id. 173; Code Civ. Pro. § 2090.) The petition or affidavit and papers state all the facts necessary to justify the granting of the relief prayed for. (51 N. Y. 402; 112 id. 585; *Com.* v. *New Bedford Bridge*, 2 Gray, 339; 78 Penn. St. 457; 70 N. Y. 430; 1 Hill, 50; 17 Hun, 83; 45 id. 323.)

*Francis H. Van Vechten* for respondent. The bridge in question cannot legally be constructed until the location and plans of such bridge have been submitted to and approved by the secretary of war, nor can any steps in such direction be taken until such approval by the secretary of war of the United States of America, the stream in question being navigable waters. (§ 7 of the act of congress of the United States, adopted September 19, 1890.) This act of congress is

paramount, and no bridge can be legally built until the consent of the secretary of war has been obtained thereto. (*People ex rel.* v. *Kelly*, 76 N. Y. 475–482.) The mandamus is sought to compel the building of a bridge in violation of the United States laws, and mandamus will not lie to compel the violation of law. (*People* v. *Fowler*, 55 N. Y. 252–254; *Howland* v. *Eldridge*, 43 id. 457.) The relator has failed to show that he is legally and equitably entitled to have the bridge built. To entitle a relator to the writ he must show himself legally and equitably entitled to some right properly ·the subject of the writ, and that it is legally demandable from the person to whom the writ must be directed. (*People ex rel.* v. *Hayt*, 66 N. Y. 607.) The common-law responsibility of counties for the repair of bridges never prevailed in this state. (*Hill* v. *Supervisors*, 12 N. Y. 52–57.) Were boards of supervisors charged as are highway commissioners, with the duty of building roads and bridges, the writ — assuming the special act (Chap. 290, Laws of 1891) to be valid — might lie, but boards of supervisors are not charged with such duties. Their powers in respect to roads and bridges are purely legislative, and not ministerial, and they alone can legally determine when, where and under what circumstances they will exercise such legislative powers. While a mandamus is an appropriate remedy to enforce the performance of a ministerial duty, it is well settled that it will not be awarded to compel an act in respect to which an officer may exercise judgment or discretion. (*People ex rel.* v. *Fairchild*, 67 N. Y. 334; *People ex rel.* v. *Leonard*, 74 id. 443–445; Laws of 1892, vol. 2, p. 2213, Highway Law, article "bridges.") That the power conferred on boards of supervisors to provide for the building of bridges, by chapter 482 of the Laws of 1875, is legislative and not ministerial is conclusively proven by the conditions existing at the time of its adoption. (Const. N. Y. art. 18, § 3; Id. art. 3, §§ 18, 23.) The special act authorizing the construction of the Maspeth avenue bridge is a local act and is unconstitutional. (*People* v. *P. R. Co.*, 86 N. Y. 1–7.) While a writ of mandamus may go to compel the

1894.]     People ex rel. Keene *v.* Supervisors.     275

N. Y. Rep.]     Opinion of the Court, per Andrews, Ch. J.

exercise of their discretion by subordinate bodies and tribunals, it never requires a decision in any specified manner. (*People* v. *Common Council*, 78 N. Y. 39.)

Andrews, Ch. J.    The demurrer to the alternative writ presents the question whether upon the facts alleged a duty rested upon the boards of supervisors of the counties of Kings and Queens to re-build the bridge over Newtown creek, on Maspeth avenue, where a bridge previously existed connecting the avenue in Queen's county with the portion of the avenue in the county of Kings within the city of Brooklyn, and whether the remedy by mandamus in this proceeding should be awarded.    The alternative writ, after reciting the facts stated in the petition, commands the boards of supervisors of the respective counties to construct a bridge over the creek at Maspeth avenue, specifying the width and other particulars conforming to the description in the act chap. 290 of the Laws of 1891, which authorized and empowered the boards of supervisors of the two counties to build a bridge at the point in question, "or to show cause," etc.    The proceeding was commenced after the passage of that act, in reliance doubtless upon its validity.    But it is now conceded that the act was in contravention of the constitutional provision (Art. 18, § 3) prohibiting the state legislature from passing local bills providing for building bridges, etc., and authorizing the enactment by the legislature of general laws conferring upon boards of supervisors powers of local legislation.    If the only duty resting upon the boards of supervisors of the two counties in respect to the bridge in question was that attempted to be created by this statute, the proceeding must of necessity fail.    But if there was an antecedent or subsequent duty imposed by other statutes now in force to re-build the bridge, and that duty is sufficiently set forth in the writ, the writ may go and that duty may be enforced, although the relator may have proceeded upon a mistake as to the validity of the act of 1891, unless upon technical objections to the form of the writ he must be remitted to a new proceeding.

Before considering the question of form we shall consider the primary question whether a duty is imposed by law upon the boards of supervisors of the two counties to re-build the bridge, independently of the act of 1891; that is, a duty disclosed upon the face of the writ, either absolute or conditional, which the defendants have failed to perform. It is averred in the writ that Maspeth avenue was opened as a highway in 1836; that it was the main thoroughfare of travel from the city of New York and Williamsburgh (now Brooklyn) to Queens county; that in the year mentioned a drawbridge was constructed over Newtown creek at Maspeth avenue for public travel; that the said avenue and bridge have continued as a turnpike, plankroad or as a public highway from 1836; that the turnpike and bridge company abandoned the road and bridge many years ago, and that for a period of five consecutive years (after such abandonment) the road and bridge was used as a public highway; that the bridge a number of years ago became out of repair and was taken down or destroyed, and has not been re-built, etc. These and other facts alleged in the writ sufficiently show, on demurrer, that Maspeth avenue was a public highway, and that the bridge constituted a part of the same.

The duty to repair a bridge on a highway which has become out of repair is imposed by statute upon some local authorities. Under the general statutory system of this state the duty is placed on the towns or municipalities in which they are located, and not upon counties, as in England, although many exceptions have been created by special statute. (*Hill* v. *Supervisors of Livingston County*, 12 N. Y. 52.) It appears by the writ that Newtown creek is a navigable stream within the ebb and flow of the tide, and constitutes, at the point in question, the dividing line between Kings and Queens counties. The case, therefore, is brought within section 68 of the County Law of 1892 (Chap. 18). That section (which is substantially a re-enactment of sub. 5, sec. 1 of chap. 482 of the Laws of 1875, as amended by chap. 320 of the Laws of 1880), after declaring that " the board (of supervisors) shall provide for

the care, maintenance and repair of any draw or other bridge," etc., and providing how the expenses shall be apportioned and paid, proceeds as follows : " But where such bridge shall span any portion of the navigable tide waters of the state, forming at the point of crossing the boundary line of two counties, such expense shall be a joint and equal charge on the two counties in which the bridge is situated, and the board of supervisors in each of such counties shall apportion such expense among the several towns and cities," etc.   The duty imposed by this section upon the board of supervisors of two counties divided by navigable tide water, spanned by a bridge, on a highway crossing the stream, to keep the same in repair, is plainly administrative and mandatory, and not discretionary. It is power conferred in the public interest and for the public benefit, and is imperative within many authorities.   (See *People* v. *Supervisors of Otsego County*, 51 N. Y. 401 ; *Com.* v. *New Bedford Bridge*, 2 Gray, 339.)

Upon the facts stated in the writ, which on demurrer are to be taken as true, we have the case of a bridge, part of a highway, over tide water which divides the counties, which has become out of repair, and the reparation of which requires that the bridge shall be re-built.   The statute casts upon the two boards of supervisors the duty to make the reparation. This duty the two counties understood was imposed upon them, since they united in approving the bill which culminated in the law of 1890, but which is now conceded to be unconstitutional.   The writ shows that the supervisors of Kings county have refused to pass any resolution authorizing the construction of a new bridge, and the supervisors of Queens refuse to proceed further than they have already gone.   We think the demurrer was not well taken, unless some of the technical objections must prevail.   The relator as a citizen of Queens county, owning property on Maspeth avenue, who is injured by the inaction of the supervisors, and who is put to inconvenience by reason of the non-repair of the bridge, is entitled to be a relator in this proceeding. (*In re Baird*, 138 N. Y. 95.)   The command of the writ is undoubtedly too broad.   It is for the boards of

supervisors to determine the character of the bridge to be built, so only that it meets the public need. The statute of 1890 being out of the way, it is the office of the writ in this case to put the boards of supervisors in motion. The court cannot control their discretion in determining the particular form and manner in which they shall execute the duty imposed upon them so long as they act in good faith. The strictness which formerly prevailed in mandamus proceedings has been greatly modified by statute and the decisions. The alternative writ is now equivalent to the complaint in an action, and the demurrer and return stand as a demurrer or answer in an ordinary suit. If the substantial right is set out in the writ, the proceeding will not fail because the relator asks for too much or mistakes to some extent the relief to which he is entitled. The court, in awarding the peremptory writ, may mould it according to the just rights of all the parties. (Code of Pro. §§ 2067, 2090; *People* v. *Nostrand*, 46 N. Y. 375; *People* v. *R. R. Co.*, 58 id. 152; *People* v. *Wilson*, 119 id. 515.)

The objection that under sec. 7 of chap. 907 of the act of Congress passed Sept. 19, 1890, the boards of supervisors cannot proceed to construct the bridge until the location and plans shall have been approved by the Secretary of War, may excuse them in a proceeding for contempt in case it appears that such consent has been sought in good faith and cannot be procured. We think the existence of this statute does not justify inaction and the matter can be provided for in the peremptory writ, if one shall be issued.

We think the demurrer was not well taken and the order and judgment of the General and Special Terms should, therefore, be reversed, with leave to the defendant to answer on payment of costs.

All concur.

Order and judgment reversed.