(65 Misc. Rep. 382.)

## DADY v. CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. December, 1909.)

1. MUNICIPAL CORPORATIONS (§ 244*)—POWER TO CONTRACT.
   In contracting a city can act only in the manner prescribed by the law of its creation.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 679; Dec. Dig. § 244.*] .

2. MUNICIPAL CORPORATIONS (§ 247*)—ILLEGAL CONTRACTS—PAYMENT BY CITY.
   Though the board of estimate and apportionment of New York City is given power to adjust and pay claims against the city on contracts executed in contravention of statutory requirements under the express pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

visions of Laws 1907, c. 601, courts have no such authority; their power in an action on such a claim being limited to determining whether the claim is valid under the statutes regulating the manner in which legal obligations of the city may be created.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 247.*]

3. MUNICIPAL CORPORATIONS (§ 360*)—CONTRACTS—EXTRA WORK.

Greater New York Charter (Laws 1901, c. 466) § 419, provides that the city may be obligated to pay for contract work where the work and supplies involve an expenditure of more than $1,000 by contract founded upon competitive bidding by order of the appropriate head of the department for additional work for the purpose of completing any contract, not exceeding 5 per cent. of the amount of such contract, and by contract without competition where the amount is less than $1,000, and the necessity therefor is certified to by the appropriate head of department and expenditure has been duly authorized and apportioned. A contract was made with the city for the erection of a pumping plant and infiltration galleries for $327,-800. Within three months thereafter the parties made a supplemental contract for the installation of manholes near three wells driven by other contractors at an estimated cost of $7,160. The contractor during the progress of the work and pursuant to oral orders of the chief engineer of the department of water, gas, and electricity performed extra work in connecting the wells with the pumping station erected by him, and in testing the same and constructing a coal box to be used in measuring coal. The extra work was not additional work done to complete the original contract, was not done pursuant to the contract founded upon competitive bidding, and the necessity therefor was not certified to by the head of the appropriate department. Held, that the mere oral order of the chief engineer was not equivalent to the formal and deliberate certification required by section 419, and the contractor could not recover therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

Action by Michael J. Dady against the City of New York. Judgment for defendant.

Jerry A. Wernberg, for plaintiff.
R. P. Chittenden and Alfred W. Booraem, for defendant.

BLACKMAR, J. On the 16th day of August, 1905, the plaintiff and defendant made a contract whereby the plaintiff agreed to erect a pumping plant and infiltration gallery at Massapequa, to be paid for according to an agreed schedule of prices for the items of work done. The estimated amount of the contract was $327,800. On the 14th day of November, 1905, the same parties made a supplemental contract for the installation of manholes and pumping stations at an estimated cost of $7,160. During the progress of the work the plaintiff, pursuant to oral orders of the chief engineer of the department of water, gas, and electricity, performed certain other work in connecting wells driven by other parties with the pumping station erected by the plaintiff, in testing the same and in constructing a coal box to be used in measuring coal, etc. For the purpose of description and not of characterization, the work so performed under the oral orders of the engineer will be called "extra work." All the work required by the main and the supplemental contracts has been performed. During the progress of the work, the engineer in charge included the items

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of extra work in the monthly estimates showing the progress of the work, and partial payments were made based upon such estimates. In the final estimate the items of extra work were stricken out. The plaintiff was paid the amount called for by the original and the supplemental contracts, but has never been paid for the extra work; and this action is brought to recover the value of the same. It is stipulated that such extra work was performed and materials furnished under the orders of the engineer, and that the reasonable value thereof is $2,298.77.

As the city has received the benefit of the work done by the plaintiff, principles of justice would seem to require that he should be paid therefor. The Legislature evidently contemplated that cases may arise where claims are illegal or invalid because created in contravention of statutory requirements, and yet that justice, propriety, and the best interests of the city may be subserved by their payment; and it has therefore conferred upon the board of estimate and apportionment power to adjust and pay such claims. Laws 1907, c. 601. This authority is not conferred upon the courts, whose power in an action at law is limited to determining whether the claim is valid under the statutes regulating the manner in which legal obligations of the city may be created, for a municipal corporation can act only in the manner prescribed by the law of its creation.

Section 419 of the charter of Greater New York (Laws 1901, c. 466) provides that, whenever any work is necessary to complete or perfect a particular job or any supply is needful for any particular purpose and the several parts of such work or supply shall, together, involve an expenditure of more than $1,000, the same shall be by contract unless otherwise ordered by a vote of three-fourths of the board of aldermen, and that such contracts shall be entered into by the appropriate borough president or heads of departments and founded upon competitive bidding. It also provides that in any contract there may be inserted a provision that additional work may be done or supplies furnished for the purpose of completing such contract, at an expense not exceeding 5 per centum of the amount of the contract, if such additional work or supply shall be ordered by the head of department. It further provides that no expenditure for work or supplies involving an amount for which no contract is required shall be made, except the necessity therefor be certified to by the head of the appropriate department, and the expenditure has been duly authorized and appropriated. The charter, therefore, provides four ways in which the city can be obligated to pay for contract work: (1) By contract authorized by the vote of three-fourths of the members of the board of aldermen; (2) where the work and supplies involve an expenditure of more than $1,000, by contract founded upon competitive bidding; (3) by order of the appropriate head of the department for additional work for the purpose of completing any contract at an expense not exceeding 5 per centum of the amount of such contract; and (4) by contract without competition, where the amount is less than $1,000 and the necessity therefor is certified to by the appropriate head of department and the expenditure has been duly authorized and appropriated.

The question is whether liability for the work in question has been incurred pursuant to the authority of any of these provisions of the charter. If ·the work performed is for the purpose of completing a contract already awarded and the expense thereof does not exceed five per centum of the amount of such contract, liability therefor may be created by the order of the said commissioner; and I believe this may be so, even if the amount of such extra work exceeds the sum of $1,000, provided it be not more than 5 per centum of the amount of such original contract. It is therefore important to decide whether or not the work in question was done for the purpose of completing the contract of August 16th. This contract is described in the instrument itself as a contract "for remodelling and extending the Massapequa pumping station near Massapequa, Long Island, including the pumping plant, pump well and infiltration gallery system, together with the necessary appurtenances." The first sentence of the specifications is as follows: "The work comprised in this contract consists of furnishing a complete pumping plant and infiltration galleries." It appears that near the pumping station erected by the plaintiff there were three wells driven by other parties called the Elliott and Marren wells.

The extra work ordered by the engineer and performed by the contractor was, first, connecting the Elliott and Marren wells with the pumping station built by the plaintiff and testing the same; and, second, building a box for measuring coal, laying a pipe under the road, and making flume connections, etc. It is true that the ultimate purpose of constructing the pumping station and infiltration galleries and of the extra work in connecting the Elliott and Marren wells, testing them, and building the box for measuring coal, was the same, namely, to supply the city of Brooklyn with water. But the plaintiff made no contract to supply the city with water. His contract was limited to the completion of certain physical structures. The test in determining whether the liability of the city can be created by the order of the commissioner is whether the work in question was "additional work performed for the purpose of completing such contract." I find that the work so done was not furnished for the completion of the contract and had no relation to the original contract, except that the ultimate purpose of both was supplying the city with water. I have, therefore, reached the conclusion that, although the total cost of this work together with the supplemental contract referred to did not amount to five per centum of the original contract, the liability of the city could not be created by the mere order of the commissioner. The contract contains other requirements conditional to the ability of the city, namely, that the work shall be preceded by a written contract in which the prices shall be fixed in advance of performance, and that claims therefor shall be made by the contractor upon the engineer on or before the 15th of the month following the performance of the work. Whether these provisions of the contract not required by the charter could be waived by the conduct of the commissioner or those who represent him, and whether such waiver could be worked out on the basis of an estoppel, created by the practical representation that such requirements would not be insisted upon, which may be inferred from the orders to proceed with the work, it is not necessary to inquire. I

understand the rule of law to be that a waiver of a contract provision can be made only by those authorized to make the contract itself, and that a contract made without authority can be ratified only by the power which had authority to contract originally. It follows that a contract made by officials in excess of their powers cannot be ratified on the theory of an estoppel created by their own acts. The commissioner had no authority to order any work to be done except additional work for the purpose of completing the contract, and the work in question was not done for the purpose of completing such contract.

As the city is not liable on the theory that the extra work was additional work performed pursuant to the order of the department or the commissioner, the question remains whether any other provision of the charter can be invoked to sustain the plaintiff's claim. The question is twofold: First. As to the claim for connecting and testing the Elliott and Marren wells, the amount of which exceeded $1,-000. Second. As to the claim for other work amounting to less than $1,000. The provision that contracts involving the expenditure of more than $1,000 can be made only upon competitive bidding is a limitation upon the power of the city to make such contracts. The omission of competitive bidding is the omission of a substantial requirement, and not a mere irregularity. It is the omission of a requirement which enters into the character of the contract itself and differs from the omission of a duty imposed upon an official with the performance of which the contractor is not concerned, as was the case in Moore v. Mayer, 73 N. Y. 238, 29 Am. Rep. 134. This is not a case where the authorities have a general power to contract, so that they are bound by an implied as well as an express contract, as in Port Jervis Waterworks Co. v. Village of Port Jervis, 151 N. Y. 111, 45 N. E. 388. Neither is it a case founded upon the breach of a valid contract between the parties, as in Gearty v. Mayor, 171 N. Y. 61, 63 N. E. 804; for in the case at bar the question concerns the validity of the contract itself. In the case of Abells v. City of Syracuse, 7 App. Div. 501, 40 N. Y. Supp. 233, the court said, "But we have reached the conclusion, with the trial court, that this was properly extra work and within the power of the superintendent and engineer to direct"; and the decision was to the effect that, although the contract required that extra work should be authorized by written order of the commissioner, yet this contract requirement might be waived. The Abells Case, as I read it, is not an authority for the proposition that because the contractor performed the work in good faith and for the benefit of the city, relying upon the orders and directions of the engineer in charge, he was entitled to recover independently of the provisions of the city charter that a contract can be made only upon competitive bidding. To hold that the plaintiff is entitled to recover for the item exceeding $1,000 in amount would be to nullify the statutory provisions limiting the power of the officials of the city to bind it by contract.

As to those items of the claim in which the amount is less than $1,000, a different rule applies. No competitive bidding is required, but the charter provides that no expenditure involving less than $1,-000 shall be made unless the necessity therefor be certified to by the

appropriate head of department and the expenditure be duly authorized and appropriated. This provision is not so substantial in its nature as that requiring that the contract be made only upon competitive bidding, and yet it is a limitation upon the authority of the officials of the city to contract. The provision requires as a condition precedent to making the contract that such official shall not only authorize the expenditure, but shall, before so doing, by a method quasi judicial in its nature, determine the necessity therefor and so formally certify. The court cannot say that an order given by the commissioner by word of mouth is the equivalent of his formal and deliberative certification before the work is undertaken that the expenditure is necessary. Keane v. City of New York, 88 App. Div. 542, 85 N. Y. Supp. 130; Donovan v. City of New York, 33 N. Y. 291; McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144. See, also, the reasoning of the court in People ex rel. Graham v. Studwell, 91 App. Div. 469, 86 N. Y. Supp. 967.

There is a line of cases in which it is held that a sudden emergency may arise in which prompt action is essential to protect life or property, under circumstances which make it impossible to comply with these provisions of the charter. It is argued that such an emergency existed in the present case, but I cannot so decide upon the evidence. It has not been shown that it would not have been entirely practicable to follow the requirements of the charter in authorizing the work in question.

The inclusion of these items in the progress certificates does not affect the question. These certificates are given to determine the amount of partial payments to be made to the contractor from time to time. They were temporary and provisional in nature, and not binding on the city under the terms of the contract itself. The engineer cannot bind the city by certifying that it is liable for work when it is not.

The extra work was not additional work done for the purpose of completing the contract. It was not done pursuant to a contract founded upon competitive bidding, and the necessity therefor was not certified to by the head of the appropriate department. The city therefore is not liable.

Judgment for the defendant, with costs.